So, Ms. Corrales, how much time would you like to reserve? Thank you, Judge Brand. I would like to reserve seven minutes for rebuttal. All right. Thank you. May it please the Court, Jody Corrales and Kevin Woldhagen on behalf of the appellants and Appellant Murphy Kittrell is also present in the courtroom. Thank you. So, Your Honors, we are here on two separate appeals, but the crux of the appeal centers around the ruling in the adversary proceeding because that ruling was entered in the administrative case. So, both orders are on appeal, but I'm going to focus my time today on the adversary proceeding. The issue, I'm sure Your Honors are aware, is whether the plaintiffs sufficiently pled their allegations under 727-A4, and it's the appellant's position that there is insufficient evidence to uphold the lower court ruling because the debtors complied with all of their requirements under the bankruptcy code to disclose their assets, sufficiently disclose their assets, and complied with the Chapter 7 trustee in providing information, additional information requested about those assets. So it's the appellant's position that the bankruptcy court committed reversible error and we are urging this court to remand the proceedings with a directive to issue the debtors a discharge. All right, so, you know, you had a trial, right, and many people testified, including the appellants, so, and the judge is a trier of fact, right, the bankruptcy judge is a trier of evidence and makes a determination. So when there is competing information in the record here, you know, it's a harder burden to show me that there was an abuse of discretion because there's facts and they're weighed by the bankruptcy judge. How can we overturn the bankruptcy judge? What precisely did she do wrong? You say, you know, they filed their schedules, they provided extra information, but there's a lot of other information that came out at the trial that, you know, why was it error for the judge to decide that that swayed her more and denied the discharge than the simple we filed our schedules, you know, and we were cooperative? Well, I think there are two instances that I can point to. The first instance is the rationale for the judge's ruling. The judge brought up an issue that was never raised in plaintiff's complaint and the issue of whether the debtor sufficiently disclosed their business interests in those entities held by the Children's Trust. That was never pled in the plaintiff's complaint and that so the debtors never had an opportunity to either amend their statement of financial affairs or address those issues at trial. So that was kind of something that just came out of nowhere in the ruling and the overarching issue. Was there testimony about it? I mean, I mean, how did it come out of nowhere in the ruling? There had to be in the record somewhere. I don't think she just said it without anything in the record. There may have been some testimony, but I mean, it was like not a pivotal or centerpiece of the litigation. It was just maybe something came in passing that just, I mean, it just was never, I mean, due process was not afforded to the debtors because they never had an opportunity to correct either the alleged omission or clarify during the live testimony what that interest was. And just to be clear, so what the plaintiffs are arguing is that the main issue here is I think the trial court conflated the issue of whether or not the assets held in the Children's Trust were assets of the estate versus whether or not there were material omissions justifying 727A for relief. And I think that's the big picture here is, you know, the Chapter 7 trustee does have a parallel action regarding whether or not those assets held in the trust are assets of the estate. And so that there's a proper time and place to argue and litigate those issues. This was not it. This was whether or not the debtors complied with their obligations under Section 521. And the debtors did. And there's also the other overarching issue of letting plaintiffs' complaints sit idle for 491 days without ever issuing a summons or trying to serve the complaint. I mean, the trial court, in my opinion, abused its discretion by allowing that complaint to sit idle and linger until, you know, to kind of take it out of the back pocket and say, oh, we have this issue that we have to still resolve. Because mind you, and I'll go back and refer to the record in the administrative case. How are your clients harmed by the 491-day delay? Because in the meantime, the debtors did come to an agreement with and a settlement with the Chapter 7 trustee to resolve the real issue here of whether or not those assets held by the children's trust are assets of the bankruptcy estate. But the trustee's action didn't include giving the debtors a discharge, or? Understood, Your Honor. And the trustee obviously can't, you know, give a discharge. Only the bankruptcy court can do that. But the real issue and the pretext of plaintiff's complaint was whether or not those assets should be used to satisfy the claims of the bankruptcy case. And I think that was the real issue. And I think the reason for the delay, the 491 days, and actually getting a summons issued was to hold up those settlement discussions and negotiations. And mind you, the plaintiffs were the ones who hand-selected the Chapter 7 trustee. This was not a regular panel trustee. This was a hand-selected by the plaintiffs. Plaintiffs were on board with everything until they determined, oh, this is not enough. The settlement that the trustee agreed to is not enough for my, you know, for the creditors. And so that's what kind of threw a hamper into it. Isn't this selection of the trustee in the hands of the United States trustee's office? Not the creditors. I mean, creditors might recommend something, but they don't get a select. There was an election. There was an elected Chapter 7 trustee. It was not like a panel trustee. So understood. And that raises another interesting point, Judge Corbett, because early on in the Chapter 7 bankruptcy case, the administrative case, the U.S. trustee's office did file a motion to dismiss the case because of the proximity of marijuana, you know, under the Controlled Substances Act. But the trustees ended up, the U.S. trustee's office ended up withdrawing that and allowing for the settlement to go forward with the Chapter 7 trustee and the debtors. And was no longer pursuing that motion to dismiss. So, you know, in this case, Your Honor, I mean, a bankruptcy court is a court of equity. And when you look at the nature of the debt, it's really primarily held by one creditor and it's Dyson. And these are judgments that were entered in 2011. And they were not related to marijuana. They were for real estate ventures gone bad, roughly around $1 million principal balance. But now they exceed $4 million. And so when you're talking about a denial of discharge in this case, you're not talking about $50,000, $60,000 credit card debt. You're talking about over $4 million of debt that the debtors have been trying to get discharged and should be, you know, discharged. And I mean, the record is clear that in this case, if you just look at this case alone, what the debtors did is not, it does not rise to the level of a denial of discharge. I mean, this burden is high. There's case law that says, and I believe it's a 2005 Ninth Circuit VAP opinion in Ray Retz that the debtors should be given the burden of, the benefit of the discharge. And it's a high burden for the plaintiffs to prove. And in this case, because the trusts were listed, it's not a case where they have trusts, but they were not disclosed. They were never listed. It's just that this was listed, right, in Schedule A, B. I mean, the debtors complied with the trustee, provided all the information, and did what they were supposed to do. They complied with their obligations under the bankruptcy code. But there were facts that were elicited at trial that, and tell me if I'm getting this correct, that the debtors still used and operated these entities, which were assets of the children's trust, while at the same time saying, we have no control, you know, we, you know, those assets of the children's trust, there's zero value to the debtor and the debtor's estate, but they're taking money and using money from the trust. So why was that not an appropriate thing for the bankruptcy judge to consider in making her determination that the debtors were not completely forthcoming or as forthcoming as they should have been with respect to disclosing assets? So with respect to that testimony regarding taking assets, I believe there were two checks, but those checks were written from the Murphy and Barbara Cottrell Living Trust. It was not the children's trust. So that's a separate trust. And so, and there was a motion in limine that was denied that I filed asking to exclude information about the living trust because that was irrelevant. There were no allegations in the plaintiff's complaint ever talking about the living trust, but that was denied. My motion in limine was denied. And so information regarding the living trust and the conduct with respect to those funds were allowed to be presented at trial. And so it was conflated, but there was never any evidence presented at trial that the debtors used funds of the children's trust. All right. Thank you. And you're within your seven minutes. So if you want to stop, you can.   Thank you. All right. Let's hear from Apele on Zoom. Thank you, Your Honor. I might be the one person in front of you today who is not a bankruptcy attorney. I'm here because this is somewhere between the 15th and the 20th different action I've had to pursue against the Cottrells who have defrauded numerous investors, requiring me to be in front of multiple state courts, multiple bankruptcy courts, and now in front of this court. The issue here, though, fundamentally comes down to the fact that, that said, my introduction is that I'm not the least qualified bankruptcy attorney will be in front of you today. And yet I'm going to wax philosophically for just a second about bankruptcy, which is, and perhaps I'm the least qualified to do so. But I think what the structure of bankruptcy is, is that it relies to a large extent upon the debtors coming in with honesty, with forthright and engaging in the bankruptcy process. And that is fundamentally put at odds when a debtor comes before the court and intentionally misleads, and intentionally makes a filing which is fundamentally inaccurate. And that's what we have here. The Cottrells had assets at the time of their bankruptcy that involved approximately $15 million in business assets engaged in the marijuana business, and more that we found out subsequently they had never disclosed. And my opponent says that, well, there's a $4 million judgment, so this is a lot of money. But yes, it's a lot of money because there's, again, enough money here to fully pay these. What the debtors are doing here is hiding a significant amount of money, $15 million, to avoid paying a $4 million judgment. They did so on the eve, yet again, of a trial. This is not the first, the second, or the third time where I have been stopped in my collection pursuits on behalf of various parties by a bankruptcy filing made by these parties to prevent a hearing to go forward on collections. This hearing was, this filing was very much made to prevent a trial going forward in Maricopa County Superior Court to have these very trusts declared sham trusts and that they were collectible on these personal judgments. But that's not the issue. The issue here is when they filed this, were they false? And of course they were. There is no response ever provided to the mere fact that the Statement of Values and the SOFAs do not disclose the trustee's status, I'm sorry, the debtor's status as trustees of these trusts. It says they are settlors of an irrevocable trust, which has a very clear meaning, which is I don't control them, I don't have any authority, I'm not holding any assets in trust for someone else, which is, in fact, why I believe it's item 25, they check no. All of that is false. And in fact, not only is it false, I kind of went through just the highlights of the issues at trial, starting on page 13 of my response brief and pointed out that they'd signed contracts saying that they were really the personal owners, this wasn't owned by a trust, approximately two years before filing, that they'd solicited an investment saying, hey, I'll pay off your personal judgment if you invest in these entities, which means a personal benefit for their judgments if there's an investment made into supposedly irrevocable trust assets. I note on page 14 of my brief that there was evidence that the Cottrells received a personal loan of $225,000 and they pledged the assets of the Cottrell Children's Trust, the supposedly irrevocable trust. So while they're saying, I have no interest in this trust, it has no value to me. They are apparently using it to pledge, to get loans, personal loans, and pledge it as security. That is a clear benefit. If you can use trust assets as security and collateral for a loan, that is a significant benefit. And they did make personal payments from KCT-owned, from Cottrell Children's Trust-owned assets. I even showed you the checks that they fraudulently had made up that were trust-owned assets, that they had checks made up in their personal name and wrote personal checks. My opponent just said there was no money that ever came out of the KCT, the Cottrell Children's Trust. That is absolutely false. The check that you can see on page 15 of our answering brief shows you that is false. And there were other direct payments that we showed at trial, payments that came directly from Cottrell Children's Trust money. One of them was, you know, at other times they paid $175,000 personal judgment using trust assets. So what we really have here is a situation where it is difficult to imagine a more significant issue of a party misleading in their filings about what they own. You know, had they simply said, you know, hey, we think we've done everything right. We think we've done all of this estate planning. We think we've gamed the system such that we could transfer all of these assets out of our name to an irrevocable trust. Our trust documents are great. They're perfect. They can get us, they can avoid us having to be responsible for these debts. Then that's what they should have done, disclosed that they were trustees, identified all of the assets that those trusts owned and simply said, come at us because we've done everything right and you, all of these assets are elsewhere. And in fact, they didn't do that. And what we showed was they did use these assets. They use it as collateral. They made the payments from themselves personally. They've never made a payment to a beneficiary. The only parties who have ever benefited from these supposedly irrevocable trusts are the debtors themselves. They've received significant payments. They've used the assets as collateral for personal loans. They've used monies in these trusts literally as their personal funds, even had personal checks made up to write checks out of those. It is hard to imagine a case. In fact, one of the problems I sort of have with this case is if this decision were to somehow become a reported decision, reportable, I think we have too high of a bar here. This is just an overload of evidence of misuse of trust funds, and that's what the trial court found. One thing that my opponent said is that nothing in the complaint stated that the entities, the Controlled Children's Trust entities were not identified. I don't really know what that has to do. It is notice pleading. There was certainly notice given in disclosure in pretrial. But in any event, paragraph 10 of the complaint says exactly that, that what they did not do is identify the business entities that were owned by these trusts. My opponent also brought up the issue of, well, there's this other trust, the Murphy and Barber Cattrall Living Trust, and that's irrelevant. She claims to have lost a motion in limine, which is true on that issue. The reason that that was relevant, though, is that that was a different trust that for a period of seven years was irrevocable. We have the documents. We show it. What the debtors here, what the Cattralls did is treat it, is try to convert that to an irrevocable trust. And for seven years, absolutely abused that trust, used it as their own amounts, paid personal bills from it. They tried to use it as both a sword and a shield and say, this is an irrevocable trust. You can't have any of the assets, meanwhile, paying all of their personal expenses from it. We had a significant amount of bank records and evidence showing the personal use of supposedly irrevocable trust funds. And what our opponent says is, well, you didn't have that same kind of evidence with regard to the Cattrall Children's Trust. And there's a reason for that. And that's because the debtors admitted that they learned from the lesson that, that, and they just ceased to have bank records at all. They ceased to hold Cattrall Children's Trust at some point in time in a bank. They kept everything in cash. So there could not be a record of their misappropriations. And so what we told the court is simply like, look, this is what happened with their other trust. And it appears this is what's happening with the Cattrall Children's Trust. They simply refuse to have any records to show you. They're just going to say there are no records exist. Therefore, you can't prove that I'm misusing the funds here. But we have shown these significant examples, again, using it as collateral, significant payments into the tens and hundreds of thousands of dollars from that trust to their personal amounts. It is a, it is kind of an overload, frankly, of impropriety here to the extent that, that what we really have here is, I hope this isn't a reported decision because I don't know that anyone else can ever meet this burden. I don't know that this is the right standard. This is just an overwhelming and substantial amount of fraud and mispropriety, the misuse of trusts. So much so that we get down to the very reason these trusts were formed. The debtors admitted it was to defraud these creditors and that they fully plan on and believe they can transfer all of their assets to an irrevocable trust, file for personal They believe they have the full right to just revoke this irrevocable trust, take back their $15 million of business assets, and pay nothing to these creditors. These are the kinds of admissions that go towards the issues of materiality, the issues of intent, and the issues of fraud that are the center point of what the court found in her determination of credibility of these witnesses and the determination of the evidence that was presented as to the significant misuses of these trust assets, and that the court ultimately determining weighing credibility and weighing the facts made the determination that these debtors were not entitled to a discharge. I'm happy to answer any questions you have. Well, can you address the motion to quash? I would like to hear about that. Was it your... I'm sorry, Your Honor. Can you please clarify? The motion to quash. They're alleging it was error for the court to quash the summons, to allow the case to proceed. Oh, I apologize. All right. I thought there was a different issue that I don't think is front of this court involved in the subpoena and some other issues, and I was misled. I'm sorry. I misunderstood. Right. The summons, because there was a 491-day pause in the litigation. There was certainly a pause. And what I will tell you is the trial court was well aware of certain circumstances involving the attorney who was involved here who had significant personal issues and had to step away from the practice of law. Representing your client, right? Yeah. That's correct. Yes. And I think that the court made certain determinations, but ultimately the determination was, as Judge Corbett, I believe, asked the question, what was the prejudice here? The court made those determinations, and so the issue is one of ultimately, yes, there was a pause, undoubtedly. There were extenuating circumstances of which the court was aware. The court weighed those, but ultimately looked at the issue of, was there any prejudice here? And the court determined there wasn't. And so even upon questioning here this morning from Judge Corbett, the debtors are unable to specify what the prejudice is other than they simply want to say, well, we don't like it. We would prefer to have been able to do something else. But the issue comes down ultimately to the weighing of the prejudice. Would it be prejudicial to my client if the court had denied the ability for us to have an extension? And there certainly would be a severe prejudice. In fact, I think as I addressed in my opening brief, ultimately the prejudice is sort of weighed out by this court's ruling here, which was we were entitled to have the court determine there was a denial of discharge. And the significant prejudice that my clients would have is not being able to pursue the full amount of these judgments, which appears that it's going to be fully recoverable in these debtors. We'll have significant multimillion dollars of assets left over even after, if we're able to fully collect. But there's been a pause still on that while this court reviews these issues. The trial, the state courts at this time have said that they're going to wait for this court's ruling before they allow us to proceed. So we've been delayed more than four years now from a hearing that we expected to happen in early March of 2022 to be able to have these trusts be declared collectible with regard to the judgments that are personally against the debtors. And so what the trial court did is exercise its discretion in weighing potential prejudice and came to the right determination in that regard. All right. Thank you. Thank you, Your Honor. Thank you very much. Any questions? No. All right. Thank you very much. Thank you. Thank you, Mr. Appellant. You've got five minutes. Thank you, Your Honors. I first wanted to apologize about my misstatements earlier regarding the checks. Mr. Larson is correct that there was a $300 check written out of the MKHS account, which is held by the Children's Trust. So I apologize. And there's also what appears to be a check written by Murphy Cottrell from that same bank account for $4,000. So I apologize for that. But I did want to raise an issue that Mr. Larson brought up. He said that there was notice in the complaint that they were asserting a claim that the business interests were not properly listed. And that's not true. And I believe he pointed to Paragraph 10 of the complaint, so I wanted to turn your attention to that. Paragraph 10 of the complaint says, and if I can read it, however, as trustees of the Cottrell Children's Trust, the debtors by definition hold the Cottrell Children's Trust RES in trust for the beneficiaries. Indeed, under the Cottrell Children's Trust agreement, the debtors expressly agree to hold the Cottrell Children's Trust estate and any additions thereto in trust subject to the terms, conditions, and provisions set forth below. That's Paragraph 10. Nothing in Paragraph 10 talks about failure to disclose business interests in the Statement of Financial Affairs. So I just wanted to make that clear that there was no allegation pled in the complaint regarding the misinformation or the alleged omission of a business interest. I also wanted to point out that plaintiffs had every opportunity to raise the claims that they were pretty much litigating, whether or not those trust assets are property of the estate. They could have raised their own claims under their own complaint and not have had to rely on the trustee to prosecute those claims on their behalf. But they chose not to. They chose to only allege a claim under 727A4. They could have filed a complaint for a substantive consolidation. They could have filed a complaint, you know, to, to, yes. And the trustee is the only one who has the right to collect the assets, right? Correct. But they could have on their own said, you know, those, those assets held by the Children's Trust are assets of the bankruptcy estate. They could have alleged a substantive consolidation claim. That's kind of a chicken and the egg question, though, too, because unless you know what the assets are, you got to know. So if it's so, that's their, that's their argument is it's not disclosed out there. Well, that's not true, though. I mean, you've heard Mr. Larson say that he's, he's litigated no more than 16 different cases in state court. But you're, you're lucky to have a sophisticated or not lucky, maybe, I don't know, to have a sophisticated person on the other side who may, may know things. But that doesn't impact your disclosure requirements, right? Right. But the fact that he didn't know, he did know, plaintiffs did know, and Plaintiffs' Counsel specifically, Mr. Larson, did know about these assets in the trust. And so for, to say that, oh, well, I didn't know and you didn't disclose it, so how was I supposed to know, is not true. I mean, it's, it's an attempt to, of gamesmanship. Well, is the duty to disclose to a particular party or is the duty disclosed in the bankruptcy forum? Well, when you look at the creditor body here, I mean, who are the creditors? I mean. Well, I don't think that's the standard. Well, it's not the standard, but yeah, but, but, but what the appellants are arguing today is that they did sufficiently disclose, they disclosed the trust. And as part of the chapter debt, chapter seven debtors requirements is they have to, to produce those trusts to a chapter seven trustee as part of like the financial disclosures along with tax returns, bank statements. I mean, that's just part of the rules and that's what they did here. So to say that, oh, well, you didn't specifically list every little thing about the trust in the schedules and statements. I mean, that's just a technicality. I mean, that's, that's not the reality that we all live in. I'm not going to, I'm going to let you finish because I interrupted you too much. No, that's okay, Judge Brand. And I think I'm done. I mean, I just, I kind of can see where the court's headed here and, you know, it's unfortunate because I believe, I truly do believe that the debtors did, you know, comply with their requirements and I think there were a lot of issues that were conflated and with respect to whether or not the trust assets are really property of the bankruptcy estate. And I think that's the real issue here. And I don't think it's proper for, to determine that under plaintiff's complaint. And I don't think that it should have been, the outcome should have been what it was. Right. Thank you. Thank you. And I do, we, thank you for clarifying your point and argument today, which I think brought it into focus that your argument is, is that the issues are conflated, perhaps improperly conflated in reaching the decision here today.  Thank you. All right. Thank you, Judge Brand. Thank you, Your Honor. All right. Thank you so much, both sides for your argument. The matter is submitted. Thank you.
judges: Brand, Corbit, and Niemann